IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

George Gregory Beckham,                )    Civil Action No. 8:13-cv-02774-BHH-JDA
                                       )
                  Plaintiff,           )    **REPORT AND RECOMMENDATION**
                                       )        **OF MAGISTRATE JUDGE**
                                       )
            vs.                        )
                                       )
Carolyn W. Colvin,                     )
Commissioner of Social Security,       )
                                       )
                  Defendant.           )

        This matter is before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this

action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the

Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for

disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended

that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

        On June 28, 2011, Plaintiff protectively filed an application for DIB, alleging an onset

of disability date of May 31, 2001.[2]  [R.150–53.]  The claim was denied initially and upon

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties
declined to consent to disposition by a magistrate judge.

[2]Plaintiff clarified in his brief that, while he originally requested a period of disability from
2001 to 2003 and disability re-commencing from August 2010 onward, Plaintiff has
"requested neither an adjudication of disability, nor payment of benefits from 2004 to 2010."

reconsideration by the Social Security Administration ("the Administration"). [R. 50–57, 60–67]. Plaintiff requested a hearing before an administrative law judge ("ALJ") and on July 10, 2012, ALJ Ronald Sweeda conducted a de novo hearing on Plaintiff's claims in North Charleston, South Carolina. [R. 21–49.]

The ALJ issued a decision on July 26, 2012, finding Plaintiff was not disabled under the Social Security Act ("The Act"). [R. 12–20.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2010. [R. 14, Findings 1.]

The ALJ found that, during the period of his alleged disability, Plaintiff engaged in substantial gainful activity between January 2001 and December 2001, January 2003 and December 2003, January 2010 and August 2010; additionally, Plaintiff just missed meeting the required income for 2008. [R. 14, Finding 2.] However, the ALJ found there had been continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity. [R. 14, Finding 3.] At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease and status post lumbar fusion surgery. [R. 14, Finding 4.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the

_____

[Doc. 19 at 13.] Further, Plaintiff has abandoned his claim for disability from 2001 through 2003. [Doc. 19 at 13.] Accordingly, the Court is concerned with the ALJ's determination of Plaintiff's disability from August 31, 2010, the date Plaintiff alleges his disability recommenced [*id.* at 13, 19], to December 31, 2010, Plaintiff's date last insured.

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 15, Finding 5.]  The

ALJ specifically considered Listing 1.04 (disorders of the spine).  [R. 15.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ

found Plaintiff retained the following residual functional capacity ("RFC"):

> through the date last insured, the claimant had the residual
> functional capacity to perform light work as defined in 20 CFR
> 404.1567(b). Specifically, the claimant is able to lift and carry
> up to 20 pounds occasionally and 10 pounds frequently and
> stand, walk, and sit for 6 hours in an 8-hour day except that the
> claimant can lift/carry 15 pounds occasionally and can sit for 6
> hours and stand/walk for 2 hours each in an 8-hour day. The
> claimant must be allowed to change positions for stretching
> purposes every 15 minutes. He can never crawl, kneel, or
> climb. The claimant can have no exposure to temperature
> extremes, high humidity, or vibration.

[R. 15, Finding 6.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable

to perform his past relevant work as a construction manager and forklift operator.  [R. 18,

Finding 7.]  Considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform.  [R. 18–19, Finding 11.]  Accordingly, the ALJ found Plaintiff had not

been under a disability, as defined by the Act, at any time from May 31, 2001, the alleged

onset date, through December 31, 2010, the date last insured.  [R. 19, Finding 12.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council

declined review.  [R. 1–6. ]  Plaintiff filed this action for judicial review on October 10, 2013.

[Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary because the ALJ

1.  improperly evaluated Plaintiff's RFC by failing to explain how he arrived at the specific limitations he assessed and why he rejected key components of Plaintiff's testimony and Plaintiff's physicians' restrictions.  Plaintiff also contends the ALJ decision is undermined by treatment notes added to the record by the Appeal Counsel; and, that the ALJ improperly discounted Plaintiff's credibility because he was able to work at times although his working illustrates several starts and stops showing Plaintiff cannot work on any "regular and continuing basis; [Doc. 19 at 13–18].

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence because the ALJ

1.  properly assessed Plaintiff's RFC, taking into account the opinion of his treating physician; [Doc. 22 at 5–8], and,

2.  properly evaluated Plaintiff's credibility and provided a well-reasoned credibility finding; [*id.* at 8–13].

Accordingly, the Commissioner requests that the Court affirm the ALJ's decision.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687

4

(S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear

disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its

6

reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. § 404.1520.  Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

9

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination

10

of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.**    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.**    ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.**    ***Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

11

31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

claimant can perform." *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion

does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making

the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged

15

by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds

that the claimant has produced such evidence, the ALJ must then determine, as a matter

of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."

*Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the

Fourth Circuit, it is well established that "subjective complaints of pain and physical

discomfort could give rise to a finding of total disability, even when those complaints [a]re

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
>                          ...

16

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

17

Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Determination**

Plaintiff contends the ALJ improperly assessed Plaintiff's RFC by failing to include a discussion of Plaintiff's ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. [Doc. 19 at 13–15.] Plaintiff also challenges the ALJ's failure to consider treatment notes regarding multiple surgeries prior to the alleged onset date which were provided to the Appeals Council and which contradict the ALJ's RFC findings. [*Id.* at 15.] The Commissioner contends substantial evidence supports the ALJ's findings, and the ALJ properly considered the recommendations of Plaintiff's treating physician. [Doc. 22 at 8–15.] Further, the Commissioner argues that Plaintiff's argument should fail as it lacks any legal foundation. [*Id.* at 8.] The Court agrees with the Commissioner.

### *ALJ's RFC Assessment*

As previously stated, the ALJ found Plaintiff retained the RFC

> to lift and carry up to 20 pounds occasionally and 10 pounds
> frequently and stand, walk, and sit for 6 hours in an 8-hour day
> except that the claimant can lift/carry 15 pounds occasionally
> and can sit for 6 hours and stand/walk for 2 hours each in an
> 8-hour day. The claimant must be allowed to change positions
> for stretching purposes every 15 minutes. He can never crawl,
> kneel, or climb. The claimant can have no exposure to
> temperature extremes, high humidity, or vibration.

[R. 15, Finding 6.] . The ALJ explained:

> After careful consideration of the evidence, the undersigned
> finds that the claimant's medically determinable impairments
> could reasonably be expected to cause some of his alleged
> symptoms; however, the claimant's statements concerning the
> intensity, persistence and limiting effects of these symptoms
> are not fully credible to the extent they are inconsistent with the
> above residual functional capacity assessment. The claimant
> stated that he stopped working in August 2010 not due to pain
> or other symptoms, but because he completed a
> house-building project. (Exhibit 5E). In his adult disability
> report, the claimant attested that he has not been able to work
> since August 31, 2010 but did not state that he was unable to
> work before that date. The undersigned notes, also, that the
> claimant's 2004 treatment for shooting a nail into his finger with
> a nail gun strongly suggests that he was performing some sort
> of manual labor. (Exhibit 9F). Also, at that time the claimant
> underwent his four-level lumbar surgery, the claimant was
> self-employed restoring a house, indicative of a considerable
> amount of physical work, and not indicative of a continuous
> period of disability from 2001 through 2003.
>
> While the claimant has been treated for degenerative disc
> disease and continuing pain following multiple surgeries, the
> undersigned finds that the claimant has had minimal treatment
> since his alleged onset date, and that the claimant has retained
> the ability to perform less than the full range of light work, as
> set forth above. March 2004 notes following the claimant's last
> back surgery indicate continued improvement. (Exhibit 3F). At
> that time, the claimant requested a return to modified duty at

19

work, and was told he could return to work with no prolonged standing or walking, no lifting over 30 pounds, and no pushing or pulling. August 2004 treatment notes indicate that the claimant's pain was a 2 on a scale of 1-10, but that his ongoing pain would require pain management, including the Duragesic patch and/or breakthrough narcotic analgesics.  Dr. Jeffrey Wingate, the claimant's treating physician, stated that the claimant's injuries and impairments are directly related to his work-related injury, and that the claimant has sustained a 35% spinal impairment and greater than 50% whole body impairment. At that time, Dr. Wingate stated that, in his opinion, the claimant was not a candidate for any return to full time gainful employment in any capacity.

However, after undergoing an epidural in August 2005, the claimant reported marked improvement and stated that his bilateral lower extremity symptoms were markedly improved, with essentially no pain. (Exhibit 8F). The claimant underwent another injection in February 2006 and June 2006 and again noted marked improvement with little or no discomfort or pain.

In August 2010, the claimant reported that an October 2009 epidural had shown "marked efficacy" for ten months. (Exhibit 5F). At that time, Dr. Robert Alexander recommended that the claimant undergo an additional injection.

At a visit to obtain more Duragesic patches in October 2010, the claimant reported that his back pain has been "well-controlled" since his 4-level lumbar fusion and that his Duragesic patches have kept him stable for many years with no side effects. The claimant stated that he was feeling in "excellent health." On examination, the claimant's musculoskeletal and neurological examinations were normal. No weakness, tenderness, or reduced range of motion was noted. The claimant has not alleged any problems using his hands. While the undersigned finds little evidence of disabling symptoms or pain, he has given the claimant the benefit of the doubt, and has considered the claimant's subjective complaints in setting forth the above postural and environmental limitations.

[R. 17–18.]

***Discussion***

It is a claimant's burden to establish disability in Steps 1 through 4 of the sequential evaluation, *Grant*, 699 F.2d at 191; therefore, Plaintiff bore the burden of establishing his exertional limitations. The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule . . . .

SSR 96–8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). Thus, the RFC is, by definition, an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. The Fourth Circuit Court of Appeals has explained that RFC determinations may contain implicit findings, including a finding of the ability to work on a regular and continuing basis. *See, e.g., Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96–8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that [Plaintiff's] physically is able to work an eight hour day.")

21

Plaintiff challenges the ALJ's RFC assessment and argues that Plaintiff could not perform light work with certain restrictions on a regular and continuing basis. More specifically, Plaintiff challenges the ALJ's RFC analysis as improperly rejecting key components of Plaintiff's testimony and his physician's restrictions.[7] [Doc. 19 at 15.] With respect to his consideration of the physician opinions of record the ALJ explained:

> Pursuant to 20 CFR §404.1527, §416.927, and Social Security Rulings 96-6p and 96-2p, the undersigned has considered the medical opinions of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants. Little weight has been given to Dr. Jeffrey Wingate's 2004 assertion that the claimant would not be able to return to full time employment. The undersigned notes that the claimant worked as a forklift operator for 14 months, beginning in September 2008, and that this work has been classified as medium by the vocational expert. (Exhibit 5E).

[R. 18.]

On August 31, 2004, Dr. Wingate, Plaintiff's treating physician, noted that Plaintiff was experiencing soreness in his back and right hamstrings, had trouble sitting for prolonged periods of time, and felt significant tailbone pain with his fusion down to S2. [R. 270.] Dr. Wingate opined that Plaintiff should never have a single maximum lift of greater than 40 pounds and should do no repetitive twisting, side to side bending, or repetitive lifting greater than 15–20 pounds. [*Id.*] Additionally, Dr. Wingate noted Plaintiff would have periods of discomfort that require him to lie supine, would need accommodations between sitting and standing on a frequent basis every 20–30 minutes, and could not function more

---

[7]Plaintiff also argues that the ALJ's RFC is inconsistent with treatment notes from multiple surgeries prior to his alleged onset date. [Doc. 19 at 15.] However, Plaintiff fails to explain how these treatment notes, made well before Plaintiff's onset date, are relevant to whether he was disabled between August 31, 2010 and December 31, 2010.

than 3 or 4 days per week at 5 to 6 hours per day. [*Id.*] However, Dr. Wingate's notes were made in 2004, and Plaintiff now alleges a disability onset date of August 31, 2010. Further, the ALJ adopted most of Dr. Wingate's limitations except for the limitation that Plaintiff could only work 3 to 4 days a week at 5 to 6 hours per day. [*See* R. 15.] Accordingly, the ALJ properly discounted this opinion in light of the fact that Plaintiff worked full time at the medium level in 2008. Therefore, substantial evidence supports the ALJ's decision.

With respect to Plaintiff's credibility, in finding Plaintiff's RFC that he can perform a restricted range of light work, the ALJ found Plaintiff's testimony not credible. The ALJ is required to make credibility determinations regarding allegations of pain or other nonexertional disabilities, and "such decisions must refer specifically to the evidence informing the ALJ's conclusions." *Hammond,* 765 F.2d at 426. "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." SSR 96-7p, 61 Fed. Reg. 34,483-01, 34,485 (July 2, 1996); *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2). If he rejects a claimant's testimony about his pain or physical condition, the ALJ must explain the basis for such rejection to ensure the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

23

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

At the hearing before the ALJ, Plaintiff testified that he was incapable of sitting or standing, the most he could stand or walk was 30 minutes, and that his lifting limit still applied. [R. 31, 37, 43.] He also indicated that sometimes the medicine or epidurals improved his condition temporarily with the longest period of improvement being a couple months. [*Id.*] Plaintiff testified that he did not seek treatment between 2005 and 2011 beyond periodically seeing a doctor for duragesic patches because there was nothing they could do for him.[8] [R. 40.] However, Plaintiff did engage in substantial gainful activity between January 2010 and August 2010 in overseeing the reconstruction of his brother's house. [R. 14, 33–34.] Further, the ALJ explained that although Plaintiff's allegations of such significant limitations and pain were not fully consistent with the medical evidence of record, the ALJ accorded Plaintiff the benefit of the doubt and further reduced the RFC. [R. 18.] Accordingly, there is substantial evidence to support the ALJ's decision in not finding Plaintiff completely credible.

---

[8] Plaintiff sought to have the ALJ make findings regarding his eligibility for a disability freeze between 2001 and 2003, and a finding that Plaintiff became re-disabled as of August 31, 2010. [R. 42–43.] The ALJ noted Plaintiff sought a disability freeze in an attempt to extend his date last insured. [R. 16.] The ALJ declined to make such a finding of disability between September 2001 and December 31, 2003, because Plaintiff failed to provide medical records or treatment notes showing that he went through three surgeries during this time. [*Id.*] The ALJ also noted that there was evidence Plaintiff was actively involved in restoring houses at some point from 2001 to 2003, evidence that there was not a continuous disability during these three years. [R. 16.] Plaintiff later provided this documentation to the Appeals Council, but it appears Plaintiff only challenged the ALJ's RFC based on these notes and did not challenge the ALJ's failure to impose a disability freeze.

Upon review, the Court finds the ALJ adequately explained his RFC findings and Plaintiff failed to meet his burden of showing disability at Steps 1 through 4. Furthermore, the ALJ's finding regarding Plaintiff's RFC is consistent with 10 C.F.R. § 404.1567(b). The decision reflects that the ALJ properly reviewed all of the evidence in determining Plaintiff's RFC. *Hays v. Sullivan*, 907 F.2d 1453,1456 (4th Cir. 1990) (holding that it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence); *see also Clarke v. Bowen*, 843 F.2d 271, 272–273 (8th Cir. 1988) ("The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the courts" (internal citation and quotation marks omitted) (alteration in original)). The ALJ's finding that Plaintiff could perform light work with the noted restrictions is supported by substantial evidence in the case record. *See English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir.1993) (finding that substantial evidence supported the ALJ's conclusion that the claimant was physically capable of limited light work despite his multiple impairments; case remanded on other grounds); *Hunter*, 993 F.2d at 35 (holding that an ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints). Therefore, this Court finds that the ALJ's opinion sufficiently explained how he determined Plaintiff's RFC. Accordingly, the ALJ did not err in his assessment of Plaintiff's credibility or RFC, and the decision should be affirmed.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

January 28, 2015
Greenville, South Carolina